1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

TRINA L. HOPTOWIT,                                         NO.  C14-5532-JLR-JPD

9                              Plaintiff,

10        v.                                               REPORT AND
                                                           RECOMMENDATION
11  CAROLYN W. COLVIN, Acting
    Commissioner of Social Security,

12                             Defendant.

13

14        Plaintiff Trina L. Hoptowit appeals the final decision of the Commissioner of the Social

15  Security Administration ("Commissioner") that denied her applications for Disability

16  Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17  of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18  administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19  the Commissioner's decision be REVERSED and REMANDED for further proceedings.

20                     I.        FACTS AND PROCEDURAL HISTORY

21        At the time of the administrative hearing, Plaintiff was a 34-year-old woman with an

22  eleventh-grade education and additional training in adult health care.  Administrative Record

23  ("AR") at 671, 676-79.  Her past work experience includes employment as an office manager

24  and home health care aide.  AR at 121.  Plaintiff was last gainfully employed in February 2010.

REPORT AND RECOMMENDATION - 1

1    AR at 120.

2         On January 31, 2011, Plaintiff protectively filed claims for SSI payments and DIB,

3    alleging a disability onset date of December 15, 2009.  AR at 103-04, 116, 622-27.  Plaintiff

4    asserts that she is disabled due to chronic back pain, sciatica, memory loss, anxiety, bone spurs

5    in her neck, depression, post-traumatic stress disorder, morbid obesity, and knee problems.  AR

6    at 119.

7         The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 75-

8    77, 79-80.  Plaintiff requested a hearing, which took place on April 27, 2012.  AR at 667-719.

9    On September 28, 2012, the ALJ issued a decision finding Plaintiff not disabled and denied

10   benefits based on his finding that Plaintiff could perform a specific job existing in significant

11   numbers in the national economy.  AR at 20-36.  After reviewing additional evidence, the

12   Appeals Council denied Plaintiff's request for review.  AR at 7-11.  On July 2, 2014, Plaintiff

13   timely filed the present action challenging the Commissioner's decision.  Dkt. 1, 3.

14                             II.      JURISDICTION

15        Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

16   405(g) and 1383(c)(3).

17                          III.      STANDARD OF REVIEW

18        Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

19   social security benefits when the ALJ's findings are based on legal error or not supported by

20   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

21   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

22   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

23   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

24   (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

REPORT AND RECOMMENDATION - 2

medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Hoptowit bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On September 28, 2012, the ALJ found:

1.  The claimant meets the insured status requirements of Act through December 31, 2014.

2.  The claimant has not engaged in substantial gainful activity since December 15, 2009, the alleged onset date.

3.  The claimant's disk disease of the lumbar spine; morbid obesity; depression; anxiety disorder, not otherwise specified, with features of posttraumatic stress disorder; polysubstance abuse in remission; and borderline personality disorder with histrionic features and cluster B traits are severe.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.  The claimant has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she is limited to standing or walking about two hours of an eight-hour workday and sitting about six hours of an eight-hour workday.  She should have a sit/stand option while remaining on task.  She can have occasional right foot control.  The claimant can occasionally perform postural activities, except she should not climb ladders, ropes or scaffolds and can frequently stoop.  The claimant can have frequent exposure to excess vibration.  The claimant can have occasional exposure to the operational control of moving machinery, unprotected heights, or hazardous machinery.  The claimant can perform simple, routine and repetitive tasks.  The claimant should not interact with the public as

part of her job duties, but can have incidental public contract.  The claimant can have occasional interaction with coworkers.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on XXXXX, 1977, and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2]

8.  The claimant has at limited education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.  Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.  The claimant has not been under a disability, as defined in the Act, from December 15, 2009, through the date of the decision.

AR at 22-36.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.  Whether the ALJ properly found Plaintiff not credible.

2.  Whether ALJ's RFC assessment is based on substantial evidence; and

3.  Whether the ALJ erred in finding at step five that Plaintiff can do other work.

Dkt. 13 at 1.

## VII.    DISCUSSION

A.    The ALJ Did Not Err in Discounting Plaintiff's Credibility.

One of Plaintiff's examining psychologists, Terilee Wingate, Ph.D., indicated that

Plaintiff was malingering as to her cognitive functioning.  AR at 634, 637-38.  The

psychologist included a malingering diagnosis among Plaintiff's "established diagnoses."  AR

---

[2]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

at 633.  This psychologist's report was submitted for the first time to the Appeals Council, although the report was written in May 2011, during the relevant period and more than a year before the ALJ's decision.  AR at 6.  The ALJ cited other evidence suggesting malingering and/or exaggeration.  AR at 31 (citing AR at 312-13 (discussing positive Waddell signs), 551 (Plaintiff reporting less pain during physical therapy exercises while distracted), 600 (Plaintiff appearing less uncomfortable and displays increased range of motion during physical therapy, yet reports to her therapist that her pain is 10/10)).  The Commissioner concedes that the evidence characterized as demonstrating "malingering" by the ALJ would be more properly considered as evidence of "exaggeration."  Dkt. 17 at 6.

Evidence of exaggeration supports an ALJ's adverse credibility determination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (holding that a credibility determination based on, among other things, a tendency to exaggerate, was supported by substantial evidence).  Although the ALJ did not have the opportunity to consider Dr. Wingate's May 2011 evaluation report, its malingering diagnosis further supports his adverse credibility determination.  *See Brewes v. Comm'r of Social Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) (directing the district court to consider Appeals Council evidence when reviewing an ALJ's decision for substantial evidence).  Dr. Wingate's report addresses Plaintiff's concern that her tendency to exaggerate was due to her personality disorder, rather than malingering (Dkt. 13 at 18-19): Dr. Wingate performed a psychological evaluation, noted Plaintiff's potential personality disorder (AR 633), and yet described her malingering test results as evidence that she is "likely faking a memory impairment."  AR at 633.  In light of this affirmative evidence of malingering, the ALJ's adverse credibility determination should be affirmed.

REPORT AND RECOMMENDATION - 7

B.      The ALJ Did Not Err in Assessing Plaintiff's RFC as to Physical and Mental
        Limitations.

        Plaintiff argues that the ALJ erred in (1) relying on State agency medical opinions that

pre-date her back surgery, without further developing the record to determine what limitations

existed post-surgery, and (2) discounting the April and June 2011 opinions of consultative

psychiatrist James Parker, M.D.  The Court will address each category of evidence in turn.

        1.      *Standards for Reviewing Medical Evidence*

        As a matter of law, more weight is given to a treating physician's opinion than to that

of a non-treating physician because a treating physician "is employed to cure and has a greater

opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751;

*see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion,

however, is not necessarily conclusive as to either a physical condition or the ultimate issue of

disability, and can be rejected, whether or not that opinion is contradicted.  *Magallanes*, 881

F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must

give clear and convincing reasons for doing so if the opinion is not contradicted by other

evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*, 157 F.3d 715, 725

(9th Cir. 1988).  "This can be done by setting out a detailed and thorough summary of the facts

and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.*

(citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his/her

conclusions.  "He must set forth his own interpretations and explain why they, rather than the

doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Such conclusions must at all times be supported by substantial evidence.  *Reddick*, 157 F.3d at

725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

2.    *State Agency Opinions*

Plaintiff argues that the ALJ erred in relying on the opinions rendered by the State agency consultants (AR at 63-65, 428-35), given that those opinions were written before her back surgery. Dkt. 13 at 9-10. According to Plaintiff, the ALJ should have obtained a consultative examination or called on a medical expert to review the entire record. Dkt. 13 at 10.

Although Plaintiff characterizes her back surgery as a "substantial change in circumstances" (Dkt. 13 at 9), she does not show that any of her symptoms or limitations

changed afterward,[3] and instead characterizes her symptoms as "continuing" after the surgery.

Dkt. 13 at 9-10.  Thus, Plaintiff has failed to establish error in the ALJ's RFC assessment.  The

ALJ was not obligated to further develop the record because he did not find the record to be

inadequate.  *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to

develop the record further is triggered only when there is ambiguous evidence or when the

record is inadequate to allow for proper evaluation of the evidence.").

       3.     *Dr. Parker's Opinions*

      Dr. Parker examined Plaintiff twice, in April and June 2011.  AR at 229-32, 405-09.  In

April 2011, Dr. Parker opined that Plaintiff "is able to do simple tasks, but likely would have

difficulties sustaining attention and accuracy.  During the interview, her behavior is regressed

and she has labile emotion."  AR at 232.  In June 2011, Dr. Parker opined that Plaintiff

> is not able to maintain normal pace and responses to questions.  She is very
> slow and delayed.  She has no recall for the immediate memory items.  During
> the interview, her affect is somewhat disengaged, it seems somewhat
> regress[ed].  She does not appear to be capable of interacting in a work situation
> based on today's mood and affect.

AR at 408-09.  The ALJ discounted both opinions, explaining that both of Dr. Parker's

opinions indicated similar findings, and yet Dr. Parker found Plaintiff to be "much more"

restricted in June 2011.  AR at 33.  The ALJ also found that Dr. Parker's opinions were

inconsistent with other evidence showing, *inter alia*, intact memory and good performance on

concentration tasks.  *Id*.  The ALJ also indicated that Dr. Parker's June 2011 functional opinion

---

[3] Plaintiff's citations to medical findings in the Appeals Council evidence and other evidence considered by the ALJ are unavailing, because none of the findings are accompanied by opinions as to their effect on Plaintiff's ability to function, and thus it is not clear how this evidence undermines the ALJ's RFC assessment and thereby establishes harmful error.  Dkt. 13 at 10-12.  For example, Plaintiff discusses new evidence that may be relevant to the ALJ's step-three findings (Dkt. 13 at 10-11), but has not assigned error to the ALJ's step-three findings.  Furthermore, to the extent that Plaintiff has identified contradictions in the medical record before the ALJ, the ALJ is entitled to resolve those contradictions.  *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

was inconsistent with his Global Assessment of Functioning score, which corresponds to only moderate symptoms or moderate difficulties in functioning. *Id.* Lastly, the ALJ noted that Dr. Parker qualified his opinion, as based on a one-time evaluation. *Id.*

Plaintiff argues that none of the ALJ's reasons to discount Dr. Parker's opinions is legally sufficient. The Court disagrees as to the ALJ's finding regarding inconsistencies with other evidence, and Dr. Parker's own qualification of his findings. An ALJ properly considers whether a medical opinion is consistent with other evidence in the record, and the ALJ here reasonably interpreted evidence in the record to be inconsistent with Dr. Parker's opinions regarding Plaintiff's memory and concentration deficits. AR at 33 (citing *inter alia* AR at 209, 244, 568). Furthermore, Appeals Council evidence in the record provides additional support for the ALJ's findings regarding memory test results. AR at 634 (diagnosing memory malingering).

Also, Dr. Parker's June 2011 opinion acknowledges what is true of any examining provider's opinion: the provider's observations are limited to what is presented during the examination. *See* AR at 409 ("She does not appear to be capable of interacting in a work situation based on today's mood and affect."). Dr. Parker reviewed few records before rendering his opinion. AR at 405. The depth of Dr. Parker's relationship with Plaintiff is a legitimate consideration for the ALJ. *See* 20 C.F.R. § 404.1527(c).

C.    The ALJ Erred at Step Five.

At the administrative hearing, the ALJ asked the vocational expert ("VE") to assume that the hypothetical claimant required, *inter alia*, a sit/stand option. AR at 713-14. The VE testified that the hypothetical claimant could perform the job of production assembler and assembler/electrical accessories I, assuming that the claimant would not need to change

1  positions any more frequently than once every half-hour.  AR at 713-14.[4]  The VE further

2  testified that his testimony was consistent with the Dictionary of Occupational Titles ("DOT").

3  AR at 716.

4       An ALJ has an affirmative responsibility to inquire as to whether a VE's testimony is

5  consistent with the DOT and, if there is a conflict, determine whether the VE's explanation for

6  such a conflict is reasonable.  *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007).  As

7  stated by the Ninth Circuit:  "[A]n ALJ may rely on expert testimony which contradicts the

8  DOT, but only insofar as the record contains persuasive evidence to support the deviation."

9  *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995).

10      Sit/stand options are not addressed in the DOT.  Plaintiff argues that because the VE's

11  testimony about whether the identified jobs could accommodate a sit/stand option is not based

12  on the DOT, the VE should have disclosed the DOT inconsistency and explicitly explained the

13  basis for his testimony.  The Commissioner argues that the basis for the VE's testimony was in

14  fact explicated because the ALJ stated at the outset of the VE's testimony that he would

15  "assume [the VE's] testimony is based on [his] knowledge, education, training and experience

16  and is consistent with the DOT unless [he] tell[s] me otherwise."  AR at 702.

17      The ALJ's assumption does not cure the VE's failure to reveal the DOT inconsistency.

18  *See Flores v. Astrue*, 546 Fed. Appx. 638, 640-41 (9th Cir. Nov. 1, 2013).  Furthermore, it

19  appears that there may have been some discrepancy between the RFC requirement of a

20  sit/stand option and the VE's testimony regarding the frequency of a position change: a

21  _____

22      [4] The Commissioner contends that the VE testified that the job numbers for the
    production assembler position would be eroded due to the sit/stand option requirement, but the
23  Commissioner is mistaken.  Dkt. 17 at 15.  The VE testified that the erosion would occur due
    to the ALJ's overall sitting and standing limitations, before the sit/stand option was even
24  mentioned.  AR at 713.  The VE did not indicate that any erosion of job numbers would occur
    as a result of the sit/stand option.  AR at 713-14.

sit/stand option indicates the freedom to sit or stand at will, not necessarily only every half-hour.  *Compare* AR at 25 *with* AR at 713-14; *see also Buckner-Larkin v. Astrue*, 450 Fed. Appx. 626, 627 (9th Cir. Sep. 20, 2011) (defining a sit/stand option).  On remand, the ALJ should conduct additional proceedings to ensure that the VE hypothetical includes all limitations and that the vocational testimony is supported by substantial evidence.

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **March 13, 2015.**  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 20, 2015**.

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 27th day of February, 2015.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13